Lee E. Woodard, Esq.
Harris Beach, PLLC
Attorneys for Debtor
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202

Camille W. Hill, Esq.
Bond, Schoeneck & King, PLLC
Attorneys for the Official Committee of
    Unsecured Creditors
One Lincoln Center
Syracuse, New York 13202

Michael Rhodes-Devey, Esq.
The Towne Law Office, P.C.
Attorneys for Vernon Downs Acquisition, LLC
421 New Karner Rd.
P.O. Box 15072
Albany, New York 12212-5072

Guy A. Van Baalen, Esq.
Assistant U.S. Trustee
10 Broad Street
Utica, New York 13501

Re:      Mid-State Raceway, Inc.
         Case No. 04-65746
          Mid-State Development Corporation
         Case No. 04-65745
         Jointly Administered Chapter 11


**LETTER-DECISION AND ORDER**


Before the Court is a Request for Fee Enhancement ("Request") filed by Harris Beach, PLLC

("HB"), counsel to the Debtors in the within jointly administered cases.  A hearing on the Request

2

was scheduled for June 27, 2006 at Utica, N.Y., but was consensually adjourned to the Court's

motion term in Syracuse, N.Y. on July 11, 2006.  On July 11th , HB appeared by its Member, Lee

E. Woodard, Esq. ("Woodard") in support of the Request.  Appearing in qualified opposition to the

Request was the Office of the U.S. Trustee by Guy Van Baalen, Esq. ("UST"), Assistant U.S.

Trustee and the Official Committee of Unsecured Creditors ("Committee"), by Bond, Schoeneck and

King, PLLC, Camille Hill, Esq, of counsel.  Also appearing in opposition to the Request was Vernon

Downs Accquisition, LLC ("VDA") by The Towne Law Offices, P.C., Michael Rhodes-Devey, Esq.

("Rhodes-Devey") of counsel.

The Request seeks a fee enhancement equal to 30% of the total fees previously awarded to

HB by this Court in the course of these Chapter 11 cases.  The parties agree that the total fees

awarded to HB to date are $844,405.92 and, therefore, the fee enhancement would approximate

$253,322.  In their qualified opposition, both the UST and the Committee indicate that they would

withdraw their opposition to the Request if HB would reduce it to 20% of the total fees awarded.

Additionally, in the case of the Committee, it adds the proviso that its consent is conditioned upon

HB's commitment that approval of the Request will in no way diminish the distribution to unsecured

creditors under the Plan.[1]

VDA opposes the Request in its entirety.  It notes that as the co-proponent of the now

confirmed Third Modified Amended Joint Plan of Reorganization ("Confirmed Plan"), it is obligated

to fund the Plan to include payment of all allowed administrative claims such as attorneys' fees.

Rhodes-Devey asserted that while VDA does not quarrel with HB's fees based on a so-called

---

[1] In a Supplement to the Request dated June 19, 2006, HB acknowledged that any amount
awarded to it as an enhancement would be subordinate to a distribution to unsecured creditors.
Woodard reiterated this position at oral argument on July 11th.

"lodestar" approach, it is opposed to any enhancement of those fees. It opines that it believes that HB has been adequately compensated for its effective representation of the Debtors, noting that Woodard's hourly rate of $295 reflects the high end of the hourly rates for bankruptcy professionals in the Northern District of New York. VDA asserts that a fee enhancement of 30% of the total fees awarded based on applicable case law would be excessive.

At oral argument, Woodard noted six factors generally relied upon by courts in approving fee enhancements. Of the six, he contends that the most significant, at least to the matter sub judice, are: (1) delay in payment and (2) risk of non-payment altogether. He argues that HB's initial net retainer of approximately $70,000 was its only guarantee of payment for at least the first 8 months of the case, during which period there was real doubt as to the Debtors' prospects for reorganization. During that period, none of the secured creditors in the case were willing to provide a "carve out" to insure payment of HB's additional fees. Despite the hourly dissipation of its retainer and the risk of continuing non-payment, HB argues that it never wavered in its exemplary representation of the Debtors. Woodard further points out that HB was without any payment of compensation, including the retainer, until December 2005, some sixteen months into the case when its First Interim Fee Application was approved. Both the UST and the Committee affirmed HB's dedication to the Chapter 11 case notwithstanding the risk of non-payment of fees.

VDA, as indicated, asserts that HB was actually rewarded for its exemplary representation of the Debtors by virtue of the fees already awarded to it.[2] VDA contends that when it agreed to fund

---

[2] VDA noted at oral argument that HB made application for interim compensation in December 2005, which application was granted and, thereafter, paid in May of 2006. HB was paid some $546,000 in fees. Thus, HB's risk of non-payment, as well as delay in payment, actually continued from August of 2004 until May of 2006.

the Debtors' plan to include professional fees, it never intended to be responsible for a fee enhancement for Debtors' counsel.

While fee enhancements are certainly available to bankruptcy attorneys, they are clearly the exception rather than the rule.  Generally, courts have recognized the so-called "lodestar" approach to compensation as being a methodology that recognizes exemplary work by bankruptcy counsel. As noted by Bankruptcy Judge Lamar Davis in Matter of *First American Health Care of Georgia, Inc.*, 212 B.R. 408, (Bankr. S.D.Ga.1997), "[e]nhancement rulings in bankruptcy cases are relatively few and reflect the admonition that enhancement is a rarity. Controlling precedent makes it clear that the lodestar rate allowed to professionals is presumptively considered to be a reasonable fee, and there is a strong presumption against enhancement once the lodestar rate is awarded." *Id.* at 414 citing to *Blum v. Stenson*, 465 U.S. 886, (1984) and *Pennsylvania v. Delaware Valley Citizens Council for Clean Air (Delaware Valley I)*, 478 U.S.546,564-66, (1986).  In ultimately denying any fee enhancements in *First American Health Care*, Bankruptcy Judge Davis noted three factors that he indicated represented a "common thread" in those cases in which courts had awarded a fee enhancement: (1) "Unique and unforseen obstacles placed in counsels' path," (2) "Results that far exceeded reasonable expectations at the outset of the case," and, finally, (3) "Consent by the party paying the fee," either at the outset of the case or by contractual agreement presumably during the case.  *Id.* at *First American Health Care.*.

HB, in the matter sub judice, suggests that at least two other factors must be considered by a court examining a fee enhancement request.  Those factors, which HB suggests played a prominent role here, are "delay in payment" and "the ultimate risk of non-payment altogether."  In support of those factors, HB both in its Request and at oral argument, noted that for an extended period,

5

following the commencement of the case, the Debtors' ability to ever reorganize was in grave doubt. HB was nevertheless required to fend off an attack from creditors aimed primarily at displacing Debtors' management, [3] to seek to reject an executory contract with a horseman's association, to file a motion to compel turnover of funds of the Debtors, to file motions to authorize the continued use of cash collateral, to file a motion for joint administration of the cases, to file a motion to approve an insurance premium financing agreement, to file motions to retain various bankruptcy professionals, to prepare and file a Chapter 11 plan and disclosure statement, which was later withdrawn, to file a motion seeking the fixing of a bar date for filing proofs of claim and to file motions to modify and assume certain collective bargaining agreements, all of which occurred within the first 12 months of the case. Many of these contested matters were both time consuming, as well as time sensitive, and were undertaken by HB with no real guarantee of ever being compensated beyond the $70,000 retainer which was being held in mandatory escrow pending a further order of the Court.

Risk of non-payment and delay in payment are factors that have generally not found great favor with courts, particularly the U.S. Supreme Court. In *Pennsylvania v. Delaware Valley Citizens' Council (Delaware Valley II)*, 483 U.S.711, (1987), the Supreme Court noted, "[W]e deem it appropriate, in order to guide the exercise of the trial courts' discretion in awarding fees, to adopt here the approach followed in *Blum* in dealing with other multipliers. As in that case ......enhancement for risk of non-payment should be reserved for exceptional cases where the need and justification for such enhancement are readily apparent and are supported by evidence in the

---

[3] On August 18, 2004, one week after the Chapter 11 cases were filed, Vestin Mortgage Inc. ("Vestin"), the Debtors' primary secured creditor, filed a motion seeking the appointment of a trustee pursuant to 11 U.S.C. § 1104, a motion in which a number of creditors ultimately joined.

6

record and specific findings by the courts." *Id* at 728.  Applying the teachings of *Delaware Valley II*, former Bankruptcy Judge Peder K. Ecker in *In re Yankton College*, 101 B.R. 151 (Bankr. D.S.D. 1989), a case with many similarities to this case, allowed a fee enhancement of 15% to the debtor's counsel, relying primarily on the risk of non-payment endured by counsel.  In justifying the award based upon risk of non-payment, former Bankruptcy Judge Ecker noted that, "*Blum* [left] open the possibility that risks assumed by counsel in taking a case can be a ground for enhancement." *Id*. at 167.  He went on to conclude that, "[f]rom the beginning, it seemed very likely that, upon a gavel sale-type liquidation, the assets of the College would bring a value barely sufficient to pay the secured creditors, therefore, leaving little or no money to pay unsecured creditors as well as the fees of the applicants." *Id*. at 168.

While the cases of the Debtors here never appeared to be headed for a "gavel sale-type liquidation," HB has adequately outlined the risk it assumed from the very outset of the cases when it appeared that the Debtors' major asset , a harness horseracing track with a rather long and storied past, would never function as such again.  The Court can personally attest to the litigious nature of the cases from the outset, and while a good deal of that litigation occurred after HB secured payment of its initial interim fee application, which was approved in December of 2005, the sixteen month period that preceded that fee application was punctuated by a concerted effort on the part of secured creditors to wrest control of the Debtors' operations from then current management, HB's clients. It is now clear to the Court that HB provided exemplary representation to the then current management, notwithstanding its well-founded belief that it might never be compensated beyond its $70,000 retainer.

As for the four remaining factors relied upon by HB in support of the Request, the Court is

of the opinion that they have been adequately addressed in HB's total fee award to date arrived at by reliance on the "lodestar" methodology.  While this Court acknowledges that controlling decisions of the U.S. Supreme Court generally involved so called "fee shifting statutes," which, by their very nature, may have tempered that Court's seeming reluctance to embrace fee enhancements under almost any circumstances, it must be guided to a large extent by their holdings.  Thus, this Court concludes that the only significant factors it will consider in  granting the Request are the risk of non-payment and the delay in payment.  In that regard, the Court believes that HB has sufficiently detailed each of those factors.

In arriving at a percentage of total fees awarded as the basis for determining the fee enhancement, the Court believes that a figure of 10% is both fair and equitable.  While the Court appreciates the risk and delay initially encountered by HB, it is clear that its ultimate fee award in excess of $800,000 was in line with its non-enhanced fee request.  Thus, the Court will approve HB's Request in the sum of $84,441.[4]  Further, the Court directs that VDA pay the Request within sixty (60) days of the date final payment is made to unsecured creditors pursuant to the Order Confirming Third Modified Amended Joint Plan of Reorganization Proposed by the Debtors and Vernon Downs Acquisition, LLC, dated September 13, 2005, which Order was dated March 15, 2006, and that said payment shall be subordinated to the payment of claims of the unsecured creditors as provided for therein.

IT IS SO ORDERED

---

[4] In arriving at 10%, the Court notes that if one were to calculate interest on the initial fee award of $546,000, approved in December 2005, from the date of filing of the case (August 11, 2004) using a rate of interest based on prime plus a risk factor of three points (11.5%), HB would have  been entitled to $83,720 in accrued interest .

Dated at Utica, New York

this 28th day of August 2006

/s/    Hon. Stephen D. Gerling
STEPHEN D. GERLING
Chief U.S. Bankruptcy Judge